# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **CHARLES TAYLOR** <br>     **LA. DOC # 229964** <br> **VS.** <br><br> **OWNER, LOUISIANA CORRECTIONAL** <br> **SERVICE, INC.** | **CIVIL ACTION NO. 3:11-cv-0323** <br><br> **SECTION P** <br><br> **JUDGE ROBERT G. JAMES** <br><br> **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Charles Taylor, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 24, 2011. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). When he filed this complaint he was incarcerated at the Caldwell Corrections Center (CCC); however, shortly after he filed, or on or about February 28, 2011, he was transferred to the South Louisiana Correctional Center (SLCC) where he is presently incarcerated. Plaintiff complained about various conditions and circumstances at CCC and named the "owner" of the Louisiana Correctional Service, Inc., CCC Warden Richard Deville, Assistant Warden Delaney Beckley and Captain Robert McKithen as defendants. He prayed for $1 million in damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that he complaint be **DISMISSED WITH PREJUDICE.**

## *Background*

Plaintiff is an LDOC inmate who was transferred to CCC on December 17, 2010. He remained at that facility until he was transferred to his present place of confinement on or about

February 28, 2011. [*See Charles Taylor v. LCS, Inc.*, No. 3:11-cv-0140 at Doc. #7, letter to the Clerk dated February 28, 2011]

Plaintiff's original complaint alleged that LCS "... failed to ... abide by the policy set forth by the Louisiana Department of Public Safety and Corrections. Failure to keep their facility up to part. (sic) Violated the inmate's Constitutional Rights. 8th and 14th Amendment." In support of these claims plaintiff attached copies of his prisoner grievances.

According to the grievances, plaintiff alleged that was being exposed to asbestos "from the rust[ ] on the iron metal walls, and the rusted bed bunks, locker..." He complained that the "shower is not up to part (sic)" and the "walls constantly drift (sic) water." Plaintiff concluded by saying that the complained of conditions do not meet Health Department standards and "...therefore LCS Caldwell Detention Center is in violation of my rights..."[Doc. #1-2,p. 2]

Plaintiff also complained that his grievance to Asst. Warden Beckley went unanswered. Plaintiff also complained that while the Christian inmates "... have a chaplain to come off the street to fellowship with them ... we, the Muslim inmates do not..." [*Id*., p. 3] Plaintiff concluded the grievance by requesting that each inmate be provided a "free medical examination to determine if they have been exposed to mold as well as asbestos" and that the results be provided to the Health Department. [*Id*., p. 4]

In another grievance plaintiff complained again about the lack of a Muslim chaplain. He also complained that the facility did not provide "professional staff" to assist inmates "with their personal problems such as death in their family..." He also complained that the facility did not have a "classification department."[*Id*., p. 7]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and

3

is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has filed an articulate complaint which succinctly sets forth his claims for relief. No further amendment is necessary because the complaints, accepted as true, simply fail to state a claim for which relief may be granted.

## 2. Conditions of Confinement

Plaintiff is a convict who complains that he was exposed to unhealthy conditions of confinement during his brief incarceration at the CCC from December 17, 2010 – February 28, 2011, a period of 73 days.

The constitutional right of a convicted prisoner to safe conditions of confinement is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999). "For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are

4

restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). In order to prevail in a conditions of confinement claim the prisoner must characterize and ultimately prove the deprivation he experienced was the "... deliberate deprivation of [an] ... identifiable human need, or ... a condition which placed the plaintiff's health or welfare in imminent danger which the defendants were aware of yet ignored." *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

Plaintiff has described the conditions of confinement as follows – rusty walls, beds and lockers, and shower walls that constantly drip water. According to plaintiff he was exposed to asbestos "from the rust..." and he concluded by saying that the complained of conditions failed Health Department standards . [Doc. #1-2,p. 2] Plaintiff equates exposure to rust with exposure to asbestos and suggests that his proximity to the rusty walls, beds and lockers amounted to an exposure to asbestos. Plaintiff's claim is conclusory at best and, a worst, delusional. Plaintiff's exposure to rust and dripping shower walls clearly presents an unpleasant circumstance, but as such does not render the conditions unconstitutional. The mere fact that the prison is not always as pleasant as the prisoner would prefer does not render the conditions unconstitutional under the Eighth Amendment. *See Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir.1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n. 5 (5th Cir.1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a

5

good hotel").

Furthermore, plaintiff claims no injury or harm resulting from his exposure to the rust and dripping shower walls. Nor does it appear that plaintiff's health was in imminent danger during his 2 ½ month incarceration at CDC. To the extent that he seeks $1 million in damages, it must be assumed that he sustained some mental or emotional damage since he has alleged no physical injury resulting from his confinement. Indeed, plaintiff's grievance requested, not treatment for himself and other inmates, but rather a physical examination to determine whether he was harmed by his brief exposure to the complained of conditions. In other words, it appears that plaintiff suffered some unspecified "fear" of future injury – in other words, mental anguish. Plaintiff's prayer for compensatory damages and his failure to allege a credible and more than *de minimis* physical injury prohibits recovery. Title 42 U.S.C. § 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The injury required by this statute must be more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003).

Plaintiff has alleged no physical injuries and one can only speculate that if he sustained such injuries, they were clearly *de minimis*. In *Luong v. Hatt*, 979 F.Supp. 481 (USDC - ND Tex. 1997), court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims. The court reasoned that the determination of whether or not an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486. The court reasoned,

> Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Id.* (Emphasis Supplied)

Plaintiff's conditions of confinement complaint fails to state a claim for which relief may be granted.

## 2. Practice of Religion

Plaintiff claims that he and his fellow Muslims at CDC were the victims of discrimination because while Christian inmates had access to Christian clergy, Muslim inmates had no access to Muslim clerics. More specifically he complained that Christian inmates "... have a chaplain to come off the street to fellowship with them ... we, the Muslim inmates do not..." [Doc. 1-2., p. 3] Plaintiff implies that the Christian clergy from Caldwell Parish visit with the Christian inmates. Of course, plaintiff must be aware that by virtue of geography and demographics there are considerably more Christians and Christian clergy in Caldwell Parish, and indeed, in all of Louisiana, than there are practicing Muslims. As a matter of fact, according to the Association of Religion Data Archives,

there were no Muslim congregations nor, for that matter, any Muslims residing in Caldwell Parish in the year 2000.[1]

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th

---

[1] See ARDA, at http://www.thearda.com/mapsReports/maps/map.asp?variable=20&state=18&variable2=

Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992). Plaintiff does not contend that the defendants have prohibited him from practicing Islam. He faults them for failing to secure a Muslim clergyman, and, as shown above, that fault may not be attributed to the defendants. In any event, plaintiff has not established that he is unable to practice his religion on his own or in the company of his co-religionists.

To the extent that plaintiff alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq.*], his claim fares no better. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a substantial burden on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief." *Id. § 2000cc-5(7)(A)*. Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70. Here, the fact that Muslim clergy are unavailable in a small rural parish in north Louisiana does not, in and of itself, establish a violation of the statute by the defendants. Plaintiff has not shown that the defendants placed a substantial burden on his ability to practice Islam. His complaint to the contrary fails to state a claim for which relief may be granted.

*4. Social Worker*

Plaintiff complained that the prison does not provide the services of a social worker or classification officer to counsel prisoners. Plaintiff mistakenly assumes that he has a Constitutional right to educational or vocational programs, to social services, or to other unspecified rehabilitation programs. Presumably, plaintiff assumes that the Due Process Clause of the Fourteenth Amendment guarantees him the right to participate in such programs while he is imprisoned. However, in order to state a Constitutional claim for either a substantive or procedural due process violation, the plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir.2000); *accord Sandin v. Conner*, 515 U.S. 472, 481–83, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life"); *Bryan v. City of Madison*, 213 F.3d 267, 274 (5th Cir.2000), cert. denied, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001)(property interest). "While no State may deprive any person of life, liberty or property, without due process of law, it is well-settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources — the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (quotation and citation omitted).

Inmates do not a have a protected property or liberty interest or right to participate in treatment programs. *See Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections). The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). Nor do prisoners have a constitutional right to "social services." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir.1991). Plaintiff's complaint to the contrary fails to state a claim for which relief may be granted.

### 5. Prisoner Grievances

Finally, plaintiff complained that his prisoner grievances were ignored. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. *See Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir.2005)

(Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (*see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 ( per curiam ) (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

*Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 17, 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE